# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Robert J. L., | ) |
|     Plaintiff, | ) <br> ) <br> )    Case No.: 20-cv-50444 |
| v. | ) <br> )    Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, <br> Commissioner of Social Security,[1] | ) <br> ) <br> ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert J. L., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [15], [22]. For the reasons set forth below, Plaintiff's motion for summary judgment [15] is granted and the Commissioner's motion for summary judgment [22], is denied. This matter is remanded to the Commissioner for further proceedings consistent with this order.

## BACKGROUND

A.    Procedural History

On April 13, 2018, Robert J. L. ("Plaintiff") protectively filed for disability and disability insurance benefits. R. 17. This application alleged a disability beginning on December 4, 2017. *Id*. The Social Security Administration ("Commissioner") denied his application on July 27, 2018, and upon reconsideration on December 7, 2018. *Id*. Plaintiff filed a written request for a hearing on February 4, 2019. *Id*. On December 11, 2019, a hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Robert J. L. appeared and testified. Plaintiff was represented by counsel. *Id*. At the hearing, vocational expert Heather Mueller also appeared and testified. *Id*.

On February 28, 2020, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 17-26. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-8. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion for summary judgment [15], the Commissioner's cross-motion for summary judgment, and response to Plaintiff's motion for summary judgment [22].

---

[1] Martin O'Malley was confirmed as Commissioner of the Social Security Administration on December 20, 2023, and is substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of December 4, 2017. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, obsessive-compulsive disorder, post-traumatic stress disorder, and generalized anxiety disorder. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff can understand, remember, and carry out simple routine tasks and use judgment limited to simple work-related decisions. He can have occasional interaction with supervisors, coworkers, and the general public. The ALJ further found that Plaintiff is not able to work with cleaning supplies or cleaning equipment. R. 21. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 24. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including store laborer, hand packager, and machine feeder R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from December 4, 2017, through the date of decision, February 28, 2020. R. 26.

## STANDARD OF REVIEW

The reviewing court examines the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. Aug. 27, 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "'Although this standard is generous, it is not entirely uncritical', and the case must be remanded if the 'decision lacks evidentiary support.'" *Horner v. Berryhill*, No. 17 C 7586, 2018 WL 3920660, at *1 (N.D. Ill. Aug. 16, 2018) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Moreover, "[t]he ALJ need not address every piece of evidence, but she must build an accurate and logical bridge from the evidence to her conclusion." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

**DISCUSSION**

Plaintiff argues the ALJ erred in evaluating the opinion of Plaintiff's treating psychiatrist. The Court agrees; therefore, this matter is remanded for further proceedings. The Court need not address Plaintiff's other arguments for remand.

Plaintiff filed his case after March 17, 2017, and as a result the ALJ "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. § 404.1520c(a)) (internal quotations omitted). Instead, the ALJ is advised to consider a variety of factors in evaluating medical opinions and must "[e]xplain how [she] considered the supportability and consistency factors" in particular. *See* 20 C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023) (affirming that under § 404.1520c(b)(2), an ALJ must consider supportability and consistency of medical opinions). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. March 31, 2022) (citing 20 C.F.R. §404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)).

On August 5, 2019, Dr. Dean Krahn, M.D., Plaintiff's treating psychiatrist, completed a Mental Impairment Questionnaire on behalf of Plaintiff. R. 640-44. Dr. Krahn filled out the first part of the questionnaire in narrative form. At the time of the questionnaire, Dr. Krahn had seen Plaintiff during 12 half-hour visits. His principal diagnoses included obsessive compulsive disorder, major depressive disorder, and post-traumatic stress disorder. "Other condition" was listed as "more generalized anxiety." R. 641. As to treatment and response, Dr. Krahn noted that multiple medications had been tried with little to no effect on Plaintiff's obsessive compulsive disorder, but occasional mild improvement as to his depression and post-traumatic stress disorder. *Id*. As to Plaintiff's medications, Dr. Krahn listed eight separate drugs, including venlafaxine, bupropion, and fluoxetine, all which were indicated as ineffective or not tolerated. As of the date of the report, Plaintiff was taking fluvoxamine and quetiapine, and had recently consented to trying cognitive behavioral therapy. Dr. Krahn further noted a variety of side effects from past medication. *Id*. The questionnaire also listed the clinical findings from Dr. Krahn's mental status examination regarding the severity of Plaintiff's mental impairments and symptoms. Those included anxiety regarding contamination, especially by germs found in floor rugs. Dr. Krahn found that Plaintiff's isolation to avoid germs keeps him from working and having social interactions. He also noted Plaintiff washes his hands incessantly. *Id*. Dr. Krahn described Plaintiff's prognosis as "guarded." *Id.*

The second page of the Mental Impairment Questionnaire identifies Plaintiff's signs and symptoms through a "checked box" format. Here, Dr. Krahn found Plaintiff to be in a mild depressed mood with sleep disturbances at times. R. 642. Dr. Krahn also noted Plaintiff was experiencing panic attacks, disproportionate fear and anxiety, and an involuntary preoccupation with unwanted thoughts. *Id*. He also found that Plaintiff was detached from social relationships, easily fatigued, experiencing muscle tension and repetitive behaviors. *Id*. Dr. Krahn found Plaintiff's intellectual functioning to be limited. R. 643. Page three of the questionnaire provides

a scale to rate the degree of Plaintiff's expected limitations in a work setting. There, Dr. Krahn found a none to mild limitation regarding understanding and remembering information. *Id*. Dr. Krahn noted a moderate limitation in Plaintiff's ability to concentrate and manage himself in the workplace, and a marked limitation as to applying information, interacting with others, persisting, maintaining pace, and adapting in the workplace. *Id*. Dr. Krahn also found Plaintiff's disorders to be serious and persistent, requiring on-going mental health treatment and therapy, and contributing to his minimal capacity to adapt to changes in his environment. R. 644. Dr. Krahn also reported that Plaintiff would be absent from work more than four days a month and suffers from an impairment that could be expected to last at least 12 months. *Id*. Finally, as to any "additional reasons" why Plaintiff would have "difficulty working at a regular job on a sustained basis," Dr. Krahn stated: "Anxiety triggered by contamination often keeps him isolated which makes a job nearly impossible." *Id*.

The ALJ found Dr. Krahn's opinions unpersuasive, declaring that Dr. Krahn's opinions were asserted in "checked boxes" and further, were unsupported by his own examinations of Plaintiff, where Plaintiff was found to be alert, oriented, cooperative, with normal and coherent speech, linear thoughts, and intact cognitive functioning. R. 23. Also, the ALJ found that Dr. Krahn's assertions that Plaintiff's impairments kept him isolated were inconsistent with the fact that Plaintiff testified at the hearing that he was working in security and directing traffic. *Id*. Plaintiff argues the ALJ did not consider other evidence of Dr. Krahn's abnormal findings. Additionally, Plaintiff argues the ALJ failed to fully analyze Plaintiff's work environment and misinterpreted Dr. Krahn's opinions.

The record reflects that in addition to being "alert, oriented, cooperative, with normal and coherent speech, linear thoughts, and intact cognitive functioning," Dr. Krahn also found Plaintiff to exhibit abnormal behaviors during his examinations. Plaintiff was first seen by Dr. Krahn in August 2016. At that time, he was diagnosed with depression, post-traumatic stress disorder, obsessive compulsive disorder, and anxiety. R. 349-50. He was seen regularly by Dr. Krahn through 2019. The record is replete with examples of Dr. Krahn's observations of Plaintiff and subsequent findings of abnormal behaviors. In June 2017, Dr. Krahn found Plaintiff to exhibit fairly rapid speech, a mildly anxious tone, and a somewhat hard to follow logic. Testing revealed Plaintiff was suffering from moderately severe depression with more than half of his days or more showing little interest or pleasure in doing things, feeling down or hopeless, feeling tired, and feeling bad about himself. Dr. Krahn also noted Plaintiff reported a serious obsession with germs. R. 474-78. In August 2018, Plaintiff reported to Dr. Krahn to feeling more worried and nervous than previously, more fidgety, and very obsessed with dirt in rugs. Dr. Krahn noted under "cognitive functioning" that Plaintiff was distracted by obsessive compulsive behaviors and was exhibiting very little insight. Dr. Krahn ordered regular appointments at the clinic for medication management and scheduled Plaintiff for therapy. R. 534-38. In October 2018, Plaintiff was seen again by Dr. Krahn, chiefly complaining of anxiety and fear of contamination. Dr. Krahn reported that Plaintiff continued to be nervous all the time – mostly related to his obsession over dirt and contamination. Plaintiff reported spending almost all of his time at home. He further reported the need to wash his hands in a very particular way and if interrupted, would have to start over. Dr. Krahn again noted Plaintiff was distracted by his obsessions and had little insight. R. 617-22. In July 2019, Dr. Krahn met with Plaintiff. At that visit, Plaintiff told Dr. Krahn he spent most of his time at home out of fear of encountering rugs if he went out. Dr. Krahn reviewed Plaintiff's long

4

list of medications that had been tried in the past in an effort to find something effective. At this time, Dr. Krahn noted that Plaintiff's obsession with dirt bordered on delusional. R. 664-69. Dr. Krahn again saw Plaintiff in August 2019. Plaintiff reported side effects from medications. Dr. Krahn noted poor compliance with medications and therapy, no hallucinations or delusions, yet "much time spent" on obsessions related to cleanliness and "vigorous attention to dirt." R. 658-60.

Despite the years' worth of medical records, in her decision, the ALJ relied almost exclusively on Dr. Krahn's Medical Impairment Questionnaire, characterizing it as "checked boxes." R. 22-23. First, the Court notes that the Questionnaire covers more than "checked boxes" – including nine sections with hand-written notes and impressions. *Id*. The ALJ's decision fails to address or consider Dr. Krahn's descriptions of Plaintiff's diagnosis, treatment, medications, side effects, findings, and prognosis. "An ALJ has the obligation to consider all relevant medical evidence." *Dorian W. v. Kijakazi*, No. 20-cv-50322, 2023 WL 6311697, at *5 (N.D. Ill. Sept. 28, 2023). Second, the ALJ's decision is void of reference to or analysis of Dr. Krahn's detailed medical records dating from August 2016 through August 2019. On the contrary, the ALJ simply stated: "Furthermore, Dr. Krahn's opinions are not supported by his own exams of the claimant in which the claimant generally was alert, oriented, co-operative, had normal speech, was coherent, had linear thought and had intact cognitive functioning." R. 23. As noted above, by the Court's review, this singular statement ignores over 200 pages of medical records over a 3-year time period. Importantly, it fails to provide an accurate assessment of Plaintiff's medical condition. "An ALJ 'cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding.'" *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir 2010)). *See also Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) ("[t]he ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record.").

Next, the ALJ found that "Dr. Krahn's assertion that the claimant's impairments kept him isolated is inconsistent with the fact that the claimant testified that he was currently working in security and directing traffic." R. 23. This, too, is inconsistent with the record. The Medical Impairment Questionnaire asked Dr. Krahn to describe any additional reason why Plaintiff "would have difficulty working at a regular job on a sustained basis." R. 644. Dr. Krahn stated: "Anxiety triggered by contamination often keeps him isolated which makes a job nearly impossible." *Id*. The ALJ failed to make the distinction between the notion that Plaintiff's impairments "kept him isolated" with what was represented by Dr. Krahn which was that Plaintiff's impairments "often kept him isolated." Plaintiff testified that he worked limited hours – "maybe three to six" hours a week directing traffic at event locations. R. 37. He further testified he previously worked inside at the events making sure the people attending remained safe. R. 38. At the time of his testimony, Plaintiff no longer had that assignment because of his progressively worsening obsessive compulsive disorder. The ALJ overlooked the distinction between directing traffic and working a security detail inside a building. The Court finds this distinction important as it relates directly to Plaintiff's obsessive compulsive disorder and significant issues regarding germs and exposure to germs. As with the medical records, the ALJ ignored portions of the record that conflict with the ALJ's ruling. "An ALJ need not discuss every detail in the record as it relates to every factor, but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (citations and quotations omitted). *See*

*also Vall B. v. Kijakazi*, Case No.: 1:19-cv-07759, 2022 WL 4551888, at *9 (N.D. Ill. Sept. 29, 2022) ("the ALJ's general assertion about what the record shows is itself flawed, because the ALJ failed to adequately address evidence in the record contrary to his conclusion").

The Court finds the ALJ failed to properly evaluate Dr. Krahn's opinion. "While the Court acknowledges that ALJs generally need only 'minimally articulate' their reasoning in assessing medical opinions, the Court holds that the ALJ failed to meet even this standard, because [she] failed to explain how [she] considered the consistency and supportability of the opinion, and thus failed to build a 'logical bridge' from the evidence to [her] conclusion." *Id*. at *10. The case is remanded for further consideration of this issue. The Court does not address the other issues raised by Plaintiff.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [15] is granted and the Commissioner's motion for summary judgment [22], is denied. This matter is remanded to the Commissioner for further proceedings consistent with this order.

Date: 02/27/2024                                ENTER:

*Margaret J. Schneider*
United States Magistrate Judge